UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TODD ROEDERER                                                                                    Plaintiff

v.                                                                            Civil Action No. 3:18-cv-00448-RGJ

LOUISVILLE/JEFFERSON COUNTY                                                                       Defendant
METRO GOVERNMENT

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Defendant Louisville/Jefferson County Metro Government ("Metro Government") moves for summary judgment. [DE 20]. Plaintiff Todd Roederer ("Roederer") responded [DE 23], and Metro Government replied, [DE 24]. For the reasons below, Metro Government's Motion is **GRANTED IN PART and DENIED IN PART**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The basic facts are not in dispute. [DE 23 at 214]. Roederer has been a Maintenance Worker in Metro Government's Department of Facilities and Fleet Management since 2006. [DE 1-2, Compl., at 1]. He has Coronary Artery Disease ("CAD") which causes shortness of breath several times a month, leaving Roederer unable to carry out normal activities for about 12 hours. *Id.* In November 2015, Roederer was granted Irregular Intermittent Leave under the Family and Medical Leave Act ("FMLA"), allowing him to leave when he was experiencing CAD episodes. *Id*, *see* Exh. 1. In February 2017, and again in April 2017, Metro positions opened for a Carpenter. *Id*. at 2. Roederer applied for both positions and was denied each time. *Id*. Roederer filed a grievance through the union, alleging that Metro Government should have offered him the Carpenter position before individuals in other departments per the collective bargaining agreements. *Id*. The

1

Louisville Labor-Management Committee ("LLMC") partially agreed with Roederer, issuing a detailed opinion letter ("Award Letter") ruling that Roederer:

> should be allowed an opportunity to a 30-day trial period at a Carpenters classification, with duties and salary in which to pre-qualify for a future Carpenter-TM position. He will be given a fair assessment of his abilities during and after the 30-day trial period. If successful, he will be awarded the next Carpenter posting.

*Id.*, *see* Exh. 3; [DE 23-8 at 244-48].

Metro Government gave Roederer the trial period, but it was only 29 days. *Id.* at 3. Roederer asserts that during the trial period, the assigned work was non-carpentry work, and thus Metro Government could not fairly assess his carpentry skills. *Id.* Roederer opposes his evaluations, specifically stating that he did not receive the proper number of evaluations, and the evaluations provided no commentary on his carpentry skills. *Id.* While neither evaluation provided negative feedback about his work, Metro Government declined to pre-qualify him for a Carpenter position, stating that he had not shown the requisite skill level needed to pre-qualify. *Id.* Roederer claims that after taking his rejection letter to his union, he was told that he had exhausted all his remedies through it. *Id.*

Roederer filed the present Complaint alleging breach of contract, Americans with Disabilities Act ("ADA") and FMLA retaliation, and age discrimination. *Id.* As to the breach of contract claim, Roederer claims that Metro breached its contract by not giving him a fair opportunity to pre-qualify for a Carpenter position. *Id.* In support of that claim, Roederer cites the shortened trial period, the type of work assigned, and the poor assessment of his abilities during and after the evaluation. *Id.* at 4-5. As to the ADA and FMLA retaliation claim, Roederer argues that Metro Government retaliated against him for taking accommodations under the FMLA for his CAD episodes by not conducting the 30-day evaluation in good faith. *Id.* at 6. Roederer also alleges

2

that Metro Government did hire him for the carpenter positions or conduct the 30-day evaluation in good faith because of his age. *Id*.

## II.     STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact about an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" if proof of that fact could establish or refute an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

Once the moving party carries the initial burden of proving that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. 2505. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S. Ct. 2505 (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505.

### III.   DISCUSSION

Metro Government argues there is no genuine issue of material fact as to Roederer's breach of contract claim and Metro Government is entitled to judgment as a matter of law. [DE 20-1 at 92]. Metro Government also argues that Roederer's breach of contract claim is barred because of his failure to exhaust administrative remedies. [*Id.* at 96]. Metro Government argues that Roederer's retaliation claim for violation of the ADA fails as a matter of law [*Id.* at 97], and that Roederer cannot make a prima facie case of retaliation for summary judgment [*Id.* at 98]. Finally, Metro Government argues Roederer's age discrimination claim fails as a matter of law.

Roederer concedes that his retaliation claim based on the ADA and his age discrimination claim under the ADEA should be dismissed [DE 23 at 214]. Thus, the Court will grant summary judgment for Metro Government on those claims and address the remaining claims below.

1. **Breach of Contract Claim**

    A. *Are there genuine disputes of material fact on Roederer's breach of contract claim?*

To prevail on a breach of contract claim, the plaintiff must prove that there was an actual agreement between the plaintiff and the defendant, that the defendant breached the contract, and that the plaintiff suffered damages as a result of the breach. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007). There is an implied covenant of good faith and fair dealing in every contract, imposing a duty to do everything necessary to carry them out. *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc*., 171 S.W.3d 4, 11 (Ky. 2005). Metro Government does not dispute that there was an actual agreement between the Union and Metro and that Roederer was a third-party beneficiary to the agreement. [DE 20, Df.'s Mot. Summ. Judg., at 5]. Metro Government disputes that it breached the contract. [*Id*.] Essentially, the dispute is whether Metro Government gave Roederer a "fair assessment of his abilities during and after the 30-day trial period," as required by the Award Letter.

Roederer argues that Metro Government breached the contract by failing to carry out the 30-day evaluation required by the Award Letter in good faith. Roederer argues that the evaluation was "a sham" that Metro Government never intended him to pass. [DE 23 at 219]. Roederer argues that the jobs assigned to him during the evaluation period were disproportionally focused on laying carpet tiles, a skill that Metro Government does not include in the official job description ("Carpenter-TM position") for the carpentry position. [DE 23 at 217]. Roederer also argues that the performance evaluations completed during the evaluation period fail to provide detail that supports Metro Government's decision that he lacks the skills to pre-qualify for the carpenter position. [DE 23 at 218]. Roederer argues that the lack of detail, coupled with lack of any other

contemporaneous documentation in Metro Government's records, show Metro Government's decision was a pretext. [*Id.*]

Metro Government argues that Roederer has only submitted his own self-serving affidavit in responding to summary judgment. [DE 24 at 249]. A party asserting that a fact is disputed must support the assertion by citing the record, including depositions, documents, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials. Fed. R. Civ. P. 56(c)(1)(A). Metro Government omits that Roederer has submitted other documents and interrogatory answers in support of his argument that Metro Government did not provide a fair assessment. [DE 23-2 at 224, DE 23-3 at 226-27, DE 23-4, DE 23-5, DE 23-6 Interr. Resp. at 235-41, DE 23-8 Award Letter at 244-48]. Roederer compares the jobs Metro Government assigned him during the trial period to the jobs and skills listed in the Carpenter-TM job description to argue that the assessment was not made in good faith. Metro Government does not argue that these documents are not authentic. *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993) (". . . documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded.")

Metro Government also argues that the Collective Bargaining Agreement ("CBA"), provided no standards for carpentry and thus Roederer's argument for breach of contract must fail. [DE 20 at 95]. But the Award Letter references the "Carpenter-TM Job Description" and its "numerous examples of the work and essential functions of the Carpenter classification," in describing the minimum qualifications for the Carpenter job posting. [DE 23-8 at 247]. The Award Letter again references the Carpenter-TM job description in providing that the trial period was to be at "a Carpenters [sic] classification, with duties and salary in which to pre-qualify for a future Carpenter-TM position." [*Id*, 248]. The January 4, 2018 letter from Metro Government to Roederer

after the trial period informed him he did not have the "skill level needed to pre-qualify for a future Carpenter-TM position." [DE 23-4 at 228]. Roederer attaches the Carpenter-TM Job Description to his Response. [DE 23-2]. Metro Government, in its responses to Roederer's interrogatories, identified the tasks it gave Roederer during the trial period and what items from the "Carpenter-TM Job Description" these tasks were supposed to assess. [DE 23-6 at 237-39]. Metro Government did not object to Roederer's citation to the Carpenter-TM Job Description in answering Interrogatory 6 or in identifying which of the assigned tasks aligned with the description in the Carpenter-TM Job Description. [*Id.*]

Viewing the documents and interrogatory answers Roederer attaches to his Response and the case in a light most favorable to Roederer, a reasonable juror could find for Roederer on the breach of contract claim. Thus, a genuine dispute exists as to whether Metro Government provided Roederer with a fair assessment and Metro Government's motion for summary judgment on this basis is denied.

> B. *Is Roederer's claim for breach of contract barred based on his failure to exhaust his contractual remedies?*

Metro Government argues that even if there is a genuine dispute as to a material fact on Roederer's breach of contract claim, summary judgment is still required because Roederer failed to exhaust his contractual remedies by not filing a grievance related to the outcome of the 30-day trial period evaluation. [DE 20 at 96]. Metro Government asserts that Roederer, "[a]s a member of a bargaining unit employed by Metro Government, [] had a right to file a grievance if he felt that he was not being assigned appropriate work or that his supervisors were not properly evaluating his work." [*Id.]* According to the CBA, "each member of the Union shall have the right to present for consideration any grievance that he or she may have as to any matter affecting his relationship with Metro Government." [CBA Art. 12, Sections 1-4, DE 20-3 at 158-59]. In other words, Metro

7

Government argues that Roederer should have filed another grievance when he received the January 4, 2018 letter [DE 23-4] that informed him he did not prove the level of skill to pre-qualify for a future Carpenter-TM position.

In response, Roederer offers his affidavit where he describes contacting his union representative after receiving his rejection letter from Metro Government. [DE 23-3 at 222]. In his affidavit, Roederer says that his union representative told him that "there was nothing more the union could do about the matter." [*Id*.]. Roederer, "anticipates calling Troy White [his supervisor] as a witness testify as to these facts himself." [*Id*.] Roederer also argues that even if he had to file yet another grievance over the way Metro Government conducted the trial period, that Metro Government has not been prejudiced. The trial period was "the result of a long, union grievance process which had resulted" in the December 2017 Award Letter that ruled Metro Government must provide Roederer the 30-day trial period. [DE 23 at 216].

An "employee may seek judicial enforcement of his contractual rights . . . if . . . the union has *sole* power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Vaca v. Sipes*, 386 U.S. 171, 185 (1967) (emphasis added). The issue is whether the Court may consider the statement allegedly made by Roederer's union representative, that there was nothing more the union could do about the matter.

"In considering whether [a plaintiff's] evidence is sufficient to withstand summary judgment, the Court considers (1) whether the evidence is sufficient to establish [the] plaintiff's burden of proof, and (2) whether the evidence is admissible." *Trollinger v. Tyson Foods, Inc.*, 543 F. Supp. 2d 842, 849 (E.D. Tenn. 2008) (citing Fed. R. Civ. P. 56(e)(1)). "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant is competent to testify on the matters stated." *Id*. Plaintiffs cannot rely on hearsay in affidavits unless the hearsay falls within a hearsay exception or is otherwise admissible. *Id*.

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. of Evid. 801(c). The union representative did not make the statement while testifying at the trial. And Roederer appears to offer it for the truth of the matter asserted—that there was nothing more the union could do about the matter. The statement made by Roederer in his affidavit describing what the union representative allegedly told him is Roederer's only proof that he exhausted his contractual remedies under the CBA. Because the statement in the affidavit is hearsay, the Court cannot consider it when evaluating a summary judgment motion. *Trollinger*, 543 F. Supp. 2d, 842, 849. Given that no other evidence points to Roederer's exhaustion of contractual remedies, summary judgment on behalf of Metro is proper.

But even if the Court could consider the inadmissible statement of Roederer's union representative on summary judgment, his breach of contract claim would still be barred for failure to exhaust administrative remedies. Unlike in *Vaca v. Sipes*, 386 U.S. at 185, the case cited by Roederer, the union here did not have the sole power to invoke Roederer's grievance procedure. Art. 12, Sec. 1 of the CBA also gave that power to Roederer and gave him that power even if he had a designated union representative. [DE 20-3 at 158-59]. Thus, even if Roederer's union representative told him there was nothing more the union could do, Roederer could present and proceed with his own grievance. Summary judgment is therefore granted in favor Metro Government on Roederer's breach of contract claim for failure to exhaust administrative remedies.

**2. FMLA Retaliation Claim**

Roederer may establish retaliation "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). Without direct evidence of retaliation, the Court must apply the *McDonnell Douglas* discrimination burden-shifting framework to analyze retaliation claims at the summary judgment stage. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313 (6th Cir. 2001) (applying *McDonnell Douglas* burden-shifting framework to FMLA retaliation claim). Because Roederer offers circumstantial evidence of retaliation, the Court analyzes his claim under the *McDonnell Douglas* framework.

    *a. Step 1: Prima Facie Case*

To establish a prima facie claim for FMLA retaliation, Roederer must show that (1) he was an eligible employee for FMLA benefits, (2) Metro Government knew that he was exercising his rights under the FMLA, (3) after learning of the Roederer's exercise of his FMLA rights, Metro Government took an employment action adverse to him, and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (2012). If Roederer establishes a prima facie case of retaliation, the burden to Metro Government to present a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* At the summary judgment stage, once a legitimate, nondiscriminatory reason has been established, Roederer must provide the Court with evidence from which a jury could conclude that Metro Government's nondiscriminatory reason for its actions is a pretext for unlawful discrimination. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

Metro Government stipulates as to the first and second elements of prima facie claim. [DE 20 at 99]. Metro Government argues there is no evidence of an adverse employment action because

Roederer was "unqualified." [DE 20 at 102]. But Metro Government is confusing the second element of a prima facie claim with the first part of the burden shifting analysis of its reason for the decision. Roederer applied for the two carpenter positions and Metro Government did not select him for either. This is not in dispute. Roederer has shown the third element. It also is undisputed that Metro Government did not find Roederer pre-qualified for the Carpenter-TM position after the 30-day evaluation period.

As to the fourth prima facie element, that there was a causal connection between his FMLA requests and the adverse employment actions, again, Metro Government confuses this step of the analysis with Roederer's burden to show pretext under the later burden shifting framework. [DE 20 at 99]. To establish a causal connection, the plaintiff must offer sufficient evidence that his protected activity was the likely reason for the adverse action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). This burden is minimal, and only requires that plaintiff put forth some credible evidence that enables the Court to deduce some causal connection between the protected activity and retaliatory action. *Id.* at 333.

There does not appear to be any dispute that Roederer's FMLA requests were ongoing when he did not receive the carpenter positions. [DE 23-7]. Roederer argues that the individuals aware of his FMLA leave in March 2017 [DE 23-7] are the same individuals Metro Government listed on the January 4, 2018 letter that informed him Metro Government determined he did not have the skill level to pre-qualify for the Carpenter-TM position. [DE 23-4]. As discussed above on Roederer's breach of contract claim, Roederer was potentially assigned mostly non-carpentry work for the evaluation. The Court has some concerns with the causal connection between Roederer's FMLA leave and the adverse actions. But taking all reasonable factual inferences in

11

Roederer's favor, Roederer has met the fourth element and established a prima facie claim for purposes of summary judgment.

  *b. Step 2: Burden shifting Framework*

Metro Government argues it had a legitimate nondiscriminatory reason for not awarding the job two carpentry jobs to Roederer, and that his performance during the evaluation period was unsatisfactory per the rejection letter sent in January 2018. [DE 20 at 102]. Metro Government does not address the reasons for not awarding Roederer the two previous carpenter positions. The Award Letter determined that Roederer met the minimum qualifications to warrant a 30-day trial period for a Carpenter-TM position. [DE 23-8]. But given that Metro Government has offered some legitimate, nondiscriminatory reason for refusing to give Roederer to find him pre-qualified for the Carpenter-TM position, the burden then falls on Roederer to prove that Metro's reason for its actions is a pretext for unlawful discrimination. *Vincent*, 514 F.3d 489, 494.

Roederer essentially argues that the reason offered was not the actual reason for the adverse actions. *Imwalle,* 515 F.3d at 545 (citing *Manzer,* 29 F.3d at 1084). The Sixth Circuit has observed that finding out the true reason for an employer's actions in the retaliation context often presents "an elusive factual question." *Singfield v. Akron Metropolitan Housing Authority,* 389 F.3d 555, 564 (6th Circuit 2004). Thus, "caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Id.* As discussed above, the jobs Metro Government assigned Roederer during the evaluation period were focused on laying carpet tiles, a skill that is not included in the official job description for the Carpenter-TM position referenced in the Award Letter. [DE 23 at 217]. Roederer also argues that the performance evaluations completed during the evaluation period fail to provide detail that supports Metro Government's decision that he lacks the skills to prequalify

12

for the carpenter position. [DE 23 at 218]. Roederer argues that the lack of detail, coupled with lack of any other contemporaneous documentation in Metro Government's records, show the decision was pretext. [*Id.*] Drawing all reasonable inferences in Roederer's favor, Metro Government's motion for summary judgment on Roederer's FMLA retaliation claim is denied.

## **CONCLUSION**

For the reasons stated above, Metro Government's motion for summary judgment [DE 20] is granted in part and denied in part consist with this memorandum and order.